# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES MENDOZA,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>D. K. SISTO, et.al.,<br><br>　　　　　Respondent.<br>_____/ | CV F   07-00094 SMS HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY<br><br>[Doc. 1] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

## BACKGROUND

Following jury trial in the Superior Court of the State of California, County of Stanislaus, Petitioner was convicted of assault with a firearm, discharge of a firearm at an occupied building, and participation in a criminal street gang (Cal. Penal Code §§ 186.22(a), 245(a)(2), 246.) The jury also found true the allegations of personal firearm use and criminal street gang affiliation as to both firearm counts (Cal. Penal Code §§ 186.22(b)(1), 12022.5(a)). Petitioner was sentenced to a total term of 15 years to life. (CT 211-215.)

Petitioner filed a timely notice of appeal. On November 16, 2004, the Court of Appeal for the Fifth Appellate District affirmed Petitioner's conviction and sentence. (Lodged Doc. No. 4.)

On or about November 20, 2004, Petitioner filed a petition for review in the California Supreme Court. (Lodged Doc. No. 5.) The petition was denied on January 12, 2005. (Id.)

On July 26, 2005, Petitioner filed a petition for writ of habeas corpus in the Stanislaus County Superior Court. (Lodged Doc. No. 6.) The petition was denied on August 4, 2005. (Id.)

On January 3, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, Fifth Appellate District. (Lodged Doc. No. 7.) The petition was denied on January 12, 2006. (Id.)

On March 10, 2006, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was denied on November 1, 2006. (Lodged Doc. No. 8.)

Petitioner filed the instant federal petition for writ of habeas corpus on January 11, 2007. (Court Doc. 1.) Respondent filed an answer to the petition on October 12, 2007, and Petitioner filed a traverse on December 13, 2007. (Court Docs. 22, 27.)

## STATEMENT OF FACTS[1]

Rosie Riojas, her boyfriend Frank Savala, Rosie's and Frank's two-year-old daughter, and Frank's brother Kinsino Savala were at the home of Frank's and Kinsino's mother Antonia Savala in Modesto one night.[2] Rosie, Frank, and Antonia went outside after Moises Mendoza and another male ("the other male") began arguing outside with Kinsino. Moises said he and his companion were from Brick City. In the opinion of a gang officer, Brick City is a Sureno gang, Frank and Kinsino were members of the Norteno gang, and Moises's mention of Brick City told "everyone in the neighborhood who's about to watch this fight that this is Brick City's territory now."

Shortly after Rosie, Frank, and Antonia went outside, Moises's brother Carlos Mendoza walked up with a pit bull, pulled out a handgun, and fired at Kinsino's legs. Rosie, Frank, Kinsino, and Antonia ran back to the house. The other male tried, but failed, to take the gun away from Carlos. Rosie went outside again, said she did not want any trouble, and told Carlos, Moises, and the other male to "leave, leave, leave." Carlos struck her on the head with the butt of the gun.

After Frank, Kinsino, and Antonia went outside again, Moises wrestled Kinsino to the ground, Antonia hit Moises on the head with a rock, and Moises threw the rock at her house, breaking a window. Frank told Moises he did not

---

[1] The Court finds the Court of Appeal correctly summarized the facts in its November 16, 2004, opinion. (Lodged Doc. No. 4.) Thus, the Court adopts the factual recitations set forth by the California Court of Appeal, Fifth Appellate District.

[2] For brevity, clarity, and consistency, later references to witnesses are by first names only since several people share surnames.

want any problems and asked Moises to leave, but Moises said, "It's Brick City right here." Moises, Carlos, and the other male got into a car after Moises saw Antonia on the phone with the police, but Moises stepped out of the car and fired shots at Antonia's house, where Rosie's and Frank's daughter was inside alone. Officers recovered .380 caliber bullets from the outside door and from the inside hallway floor and a shell casing from the gutter outside. Wood chips from the impact of the bullet striking the door hit Antonia.

A couple of weeks after the shooting, Moises and Carlos refused commands of officers to surrender and hid in a crawl space beneath their house until a SWAT team forced them out with tear gas. Photographs and tattoos showed Moises's ongoing associations with members of the Sureno gang generally and with members of the Brick City gang specifically. In the past, he had admitted to police he was a Sureno gang member but usually claimed either to have dropped out of the Brick City gang or never to have joined that gang, even though he sometimes wore the "B" belt buckle that meant Brick City. To avoid prosecution, gang members have learned from other gang members to admit some things but not others in contacts with police.

Consistent with his opinion that Moises was a member of the Brick City Sureno gang, the gang officer testified Moises claimed Brick City gang membership by using the words "Brick City" outside Antonia's house. He testified that two prior shootings, neither of which Moises committed, were predicate acts defining the Brick City Surenos as a criminal street gang. He testified the Nortenos and the Surenos were waging war in Modesto over the control of, inter alia, narcotics and weapons trafficking in Northern California.

(Lodged Doc. No. 4, Opinion, at 1-3.) (Footnote in original.)

## DISCUSSION

A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting

Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993). In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness

by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>Purkett v. Elem</u>, 514 U.S. 765, 115 S.Ct. 1769 (1995); <u>Thompson v. Keohane</u>, 516 U.S. 99, 116 S.Ct. 457 (1995); <u>Langford v. Day</u>, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.      <u>Instructional/Sentencing Errors</u>

As far as the Court can decipher, it appears that Petitioner claims the trial court erred in sentencing him under California Penal Code section 186.22(b)(4)(B), because the jury was not properly instructed pursuant to this section and did not make any factual findings to enhance his sentence under this section.

Petitioner presented this claim on direct appeal to the California Court of Appeal and California Supreme Court. (Lodged Doc. Nos. 4, 8.) Because the California Supreme Court's opinion is summary in nature, however, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 804-05 & n. 3, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); <u>see also</u> <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n. 7 (9th Cir.2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under § 2254(d)(1)).

California Penal Code section 186.22(b)(4)(B), provides that any person who is convicted of a felony violation of section 246, committed for the benefit of, at the direction of, or in association with any criminal street gang shall be sentenced to an indeterminate term of life imprisonment with a minimum term of 15 years. Cal. Penal Code § 186.22(b)(4)(B).

Petitioner argues that he was sentenced in violation of the holding in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). <u>Apprendi</u> held that any fact, other than a prior conviction, which increases the penalty beyond the prescribed statutory maximum must be submitted to the jury and proved beyond a reasonable doubt. <u>Apprendi</u>, 530 U.S. at 466. Petitioner's claim is unfounded.

By information, Petitioner was charged one count (Count IV of information) of assault

1  with a firearm, felony (Cal. Penal Code³ § 245(a)(2), and one count (Count V of information) of
2  shooting at an occupied building, felony (§ 246), and one count (Count VI of information) of
3  participation in a street gang, felony (§ 186.22(a)). (CT 104-109.) As to the first two counts (§§
4  245(a)(2) & 246), the information charged Petitioner with enhancements for each count (§§
5  12022.5(a), 186.22(b)(1)). (Id.)

6  Contrary to Petitioner's allegations, the trial court specifically instructed the jury as to the
7  charge for participation in a street gang and as to the allegation that Counts IV and V were
8  committed for the benefit of, at the direction of, or in association with a criminal street gang.
9  (CT 157-158, 160-161.) As previously stated herein, the jury found, beyond a reasonable doubt,
10 that Petitioner was guilty of all three charges and found true the allegations for the enhancements.
11 (CT 187-191.) Pursuant to the jury's factual findings of guilt, Petitioner was sentenced by the
12 trial court as follows: count V, 15 years to life with no additional time for the enhancements;
13 count IV, the midterm of three years plus four years for the § 12022.5(a) enhancement, no
14 additional time imposed for the § 186.22(b)(1) enhancement, stayed under § 654; and count VI,
15 the midterm of two years, stayed under § 654. (CT 211.) Thus, the total term of imprisonment
16 was 15 years to life. (Id.)

17 In accordance with section 186.22(b)(4)(B), Petitioner received the prescribed sentence as
18 mandated by this statute. Consequently, there was no Apprendi error as the jury made all the
19 factual findings necessary for the sentence, and as mandated by statute, the trial court sentenced
20 Petitioner to 15 years to life. Accordingly, the state courts' determination of this issue was not
21 contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

22 D.    Ineffective Assistance of Counsel

23 Petitioner claims that his trial counsel was ineffective for failing to object to the statutory
24 sentence, failing to make an opening statement, failing to present a defense, and failing to object
25 to the admission of the gang expert's testimony. (Petition, at 16 (claim 2), 22 (claim 4).)

26 The California Supreme Court summarily denied the allegations on the merits raised in

---

³ All further statutory references are to the California Penal Code unless otherwise indicated.

Claim Two. (Lodged Doc. No. 8.) AEDPA's strict standard of review is relaxed when the state court reaches a decision on the merits but provides no reasoning to support its conclusion. Under such circumstances, the federal court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Brazzel v. Washington, 491 F.3d 976, 981 (9th Cir.2007), *quoting* Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir.2002); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.").

The California Court of Appeal rejected the allegation of ineffective assistance of counsel raised in Claim Four, and the California Supreme Court summary denied the petition for review. (Lodged Doc. Nos. 4, at 6-8 & 5.) This Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. at 804-05 & n. 3.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v.

Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must also evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994). More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since it is necessary to prove prejudice, any deficiency that does not result in prejudice must necessarily fail. Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

To prevail on a claim of ineffective assistance based on counsel's failure to object at trial, the petitioner must show that the objection had merit. United States v. Aguon, 851 F.2d 1158, 1172 (9th Cir. 1988). Similarly, the failure to raise a motion is not ineffective assistance if the motion would have been futile. United States v. Quintera-Barraza, 78 F.3d 1344, 1349 (9th Cir. 1996).

    1.    <u>Failure to Object During Sentencing</u>

Petitioner contends that counsel was ineffective for failing to object to his sentence as a violation of Apprendi. However, for the reasons explained *supra*, because there was no Apprendi error, defense counsel could not have been ineffective for failing to raise a meritless objection. See United States v. Aguon, 851 F.2d 1158, 1172 (9th Cir. 1988) (en banc), overruled on other grounds, Evans v. United States, 504 U.S. 255 (1992); see also Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (failure to raise a meritless argument is not ineffectiveness).

    2.    <u>Failure to Present an Opening Statement</u>

8

Petitioner contends that counsel was ineffective for failing to present an opening statement.

Contrary to Petitioner's conclusory allegation, defense counsel did present an opening statement. Defense counsel reserved making his opening statement until after the prosecution had presented its case in chief.[4] Petitioner has simply failed to demonstrate how counsel's performance was in any way deficient and prejudicial by reserving the opening statement until after the prosecution had presented its case in chief. This is particularly so, given that counsel have wide latitude in making decisions regarding trial strategy and procedures. Petitioner has simply failed to carry his burden under Strickland, and this is without merit.

### 3. Failure to Present a Defense

Petitioner contends that counsel presented only a thirty minute defense, resulting in the presentation of no defense.

The record of the trial does not support Petitioner's contention. At trial, Petitioner's defense was mistaken identity as he was not present at the scene of the crime. Petitioner, through counsel, presented two alibi witnesses, his sister and his sister's friend. Petitioner's sister testified that Petitioner and his co-defendant were home with her on the day and evening in question having a barbecue with family and they never left. (RT 352.) The sister's friend also confirmed that Petitioner and his co-defendant were present at home on the day in question. (RT 371-372.)

Petitioner has failed to demonstrate how counsel was ineffective, as he has not identified what evidence or other defense, counsel should have presented in lieu of the alibi defense. Petitioner simply alleges in conclusory terms that counsel's defense was deficient. Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not

---

[4] Both counsel for Petitioner and counsel for his co-defendant requested to reserve their opening statements. (RT 40.)

In addition, as Respondent submits, the record does not include the transcript of defense counsel's opening statement; however it does indicate that counsel requested to make a brief statement and all the witnesses were excluded from the courtroom during the presentation of the opening statement. (See RT 349.)

merit habeas relief).  Consequently, Petitioner has simply failed to met his burden under Strickland, and his claim is without merit.

### 4. Failure to Object to Expert Testimony

Petitioner contends that counsel was ineffective for failing to object to the admission of the gang expert's overbroad testimony about the Surenos' plan to use Modesto as its avenue for taking over the former Norteno territory in Northern California.

California Evidence Code section 801 provides: "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is:

> (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and
> (b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion.

The California Supreme Court has determined that expert testimony regarding the attributes of gang membership is admissible if the probative value in establishing motive, intent, or identity outweighs the potential inflammatory or prejudicial effect of such evidence. See People v. Williams, 16 Cal.4th 153 (1997); see also People v. Gardeley, 14 Cal.4th 605 (1996).

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held, in pertinent part:

> Here, the gang officer's testimony about the Sureno challenge to Norteno dominance in Northern California was no more disturbing and no more graphic than the gang evidence admissible on the criminal street gang charge and the criminal street gang allegations or the evidence admissible on the firearm charges. Even assuming arguendo the evidence at issue here was inadmissible, counsel could well have made a reasonable tactical decision not to object, so as to avoid emphasizing to the jury a small amount of additional inculpatory evidence on a record already replete with incriminating gang evidence.  Since the record does not affirmatively disclose the absence of that rational tactical purpose, [Petitioner] falls short of meeting the rigorous standard on appeal for showing ineffective assistance. Even if counsel had objected, the other gang evidence and the evidence of the firearm charges made a different result not reasonably probable.

(Lodged Doc. No. 4, at 7-8.)

As previously stated, Petitioner was charged with a gang enhancement pursuant to

California Penal Code section 186.22, subsection (b)(1) which states:

> Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted . . . .

As Petitioner was charged with participation in a criminal street gang, expert testimony regarding gang activity in Modesto was certainly relevant to prove those charges. Accordingly, any objection by defense counsel to such testimony would have been futile, and counsel could not have been ineffective. United States v. Quintera-Barraza, 78 F.3d at 1349. Moreover, as stated by the Court of Appeal, counsel could have very likely made a tactical decision to refrain from objecting in an attempt to avoid drawing the jury's attention to such testimony.

However, as found by the Court of Appeal, even if counsel's failure to object amounted to ineffective assistance, Petitioner was not prejudiced. In view of the other substantial evidence regarding Petitioner's gang affiliation, the expert testimony regarding the territorial struggle by the Sureno gang members was insignificant. There was evidence that Petitioner started a fight with rival gang members stating that he was from "Brick City," a Sureno gang. There were photographs and tattoos which demonstrated Petitioner's participation in the Sureno gang. (RT 213-214, 224-226.) In addition, Petitioner had previously admitted to police that he was a member of the Sureno gang, but claimed he had either dropped out or never formally joined, despite the fact that he frequently wore the "B" belt buckle signifying Brick City. (RT 206, 215-223.) In light of the above evidence, the testimony regarding the territorial struggle by the Surenos challenging the Nortenos for control was no more prejudicial or inflammatory than the other substantial evidence demonstrating Petitioner's affiliation with the gang and identification as the shooter at the scene. Accordingly, even if counsel succeeded with an objection, there is not a reasonably likelihood that Petitioner would have received a more favorable verdict, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

E.     Failure to Sever Gang Allegation Charges

Petitioner contends that the trial court erred by denying his motion to sever the gang allegations from the other charges in the case. (Petition, at 17-21, claim 3.)

In denying the defense motion to bifurcate the issue of the gang-related enhancements, the trial court considered and analyzed the relevant California law finding that it was not so inflammatory to prejudice the consideration of the evidence of the assault with a deadly weapon. In addition, the gang evidence was cross-admissible as it was relevant to prove motive for the assault with a deadly weapon charge. The gang evidence was directed, not to Petitioner's disposition to commit the other crimes, but rather only to the purported motive of members of rival gangs shooting at each other in order to establish territory and dominance. Under California Evidence Code section 352, the trial court found that motive was relevant to the prosecution's case and the evidence was not cumulative, nor was it substantially outweighed by the confusion of issues or unduly prejudicial. (See RT 34-37.)

Petitioner raised this claim on direct appeal to the California Court of Appeal and California Supreme Court. Looking through to the last reasoned decision of the Court of Appeal, the claim was denied, in pertinent part, as follows:

> The evidence of [Petitioner's] guilt of the criminal street gang charge was neither disparate nor inflammatory in comparison with his guilt of the other charges. To the contrary, on a record of substantial evidence of his involvement in all three charges, we conclude there was no reasonable likelihood of the jury's knowledge of the criminal street gang charge influencing its decision about the other charges. (See *People v. Bean*, *supra*, 46 Cal.3d at p. 939.) In the absence of both actual prejudice and potential prejudice, the denial of [Petitioner's] motion deprived him of neither due process nor a fair trial.

(Lodged Doc. No. 4, Opinion, at 6.)

Although the Court of Appeal decision cited exclusively to California law, the decision is consistent with the controlling federal law. See Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (holding that a state court need not cite United States Supreme Court cases so long as the state court's reasoning and result do not contradict Supreme Court precedent.) "Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder 'rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his [constitutional] right to a fair trial'." United States v. Lane, 474 U.S. 438, 449 (1986) (citing

Kotteakos v. U.S., 328 U.S. 728, 776 (1946). In determining whether joinder is unduly prejudicial, courts consider whether joinder of the counts allows evidence of other crimes to be introduced in a trial where the evidence would otherwise be inadmissible and whether a strong evidentiary case is joined with a weaker one. Bean v. Calderon, 163 F.3d 1073, 1084 (9th Cir. 1998). Joinder does not in general terms result in prejudice if the evidence of each crime is simple and distinct and the jury is properly instructed so that it may compartmentalize the evidence. Id. at 1085-1086.

Here, as explained by the trial court, the gang evidence was sufficiently similar and cross-admissible to the assault with a deadly weapon charge as it provided a motive for the assault with a firearm and discharge of a firearm at an occupied dwelling. In addition, the gang evidence was not more inflammatory than the other evidence relating to the charged offense. In particular, there was eyewitness testimony that Petitioner initiated a fight, threw a rock, fired shots at an occupied dwelling, and made reference to "Brick City" a Sureno street gang. Accordingly, as stated by the Court of Appeal, the evidence against Petitioner was substantial. Moreover, any potential prejudice was diminished by the trial court's following instruction to the jury:

> Evidence has been introduced for the purpose of showing that the defendant committed a crime or crimes other than that for which he is on trial.
> Except as you will otherwise be instructed, this evidence, if believed, may not be considered by you to prove that defendant is a person of bad character or that he has a disposition to commit crimes. It may be considered by you only for the limited purpose of determining if it tends to show:
> The existence of the intent which is a necessary element of the crime charged;
> For the limited purpose for which you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case.
> You are not permitted to consider this evidence for any other purpose.

(CT 143-144, CALJIC 2.50.) The trial court also instructed the jury with CALJIC 2.09, which also instructs the jury that evidence admitted for a limited purpose can only be considered for that purpose. (CT 146.) Federal courts presume that juries follow instructions, including cautionary and curative instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000); Richardson v. Marsh, 481 U.S. 200, 201 (1987); United States v. Brady, 579 F.2d 1121, 1127 (9th Cir. 1978).

Based on the foregoing, the state court decision denying Petitioner's claim was not

contrary to, or an unreasonable application of, clearly established United States Supreme Court law.

F.  Admission of Preliminary Hearing Testimony of Kinsino Savala/Violation of Sixth Amendment Confrontation Clause

Petitioner claims the trial court erred in admitting the preliminary hearing testimony of Kinsino Savala by declaring him unavailable as a witness in violation of his rights under the Sixth Amendment's Confrontation Clause. (Petition, at 25-28, claim 5.)

1.  Factual Background

Kinsino Savala testified at the preliminary hearing, and was subject to cross-examination by the defense. (CT 17-26.)  During this time, Kinsino was in custody, and stated that he did not wish to testify because he felt that his life and his family's life would be in danger. (RT 283.) In order to secure his testimony at the preliminary hearing, Officer Ramirez testified that Kinsino had to be arrested on an outstanding bench warrant and the use of force was required to take him into custody. (RT 285-286.)

During trial, and out of the presence of the jury, Patrick Nickles, a paralegal for the Stanislaus County District Attorney's Office, testified regarding his attempt to serve Kinsino Savala with a subpoena to testify at trial. (RT 176-179.)  He made contact with Kinsino's mother, girlfriend, and brother's girlfriend on several different occasions, all to no avail. (RT 277-278.)  In response to information he received from Petitioner's girlfriend, he also made contact with an individual named Nacho. (RT 278-279.)  In addition, he went to a nearby park where Petitioner had been seen. (Id.)

Pursuant to California Evidence Code section 240, the trial court found that Kinsino was unavailable as a witness. (RT 288.) The Court found that the prosecution had demonstrated a good faith effort and exercised reasonable diligence in attempting to procure the witnesses presence at trial, in the two and a half weeks prior to trial. (RT 288.) The prosecution's efforts were undermined by the witnesses expressed fear for his and his family's safety, and the difficulty experienced in securing his presence at the preliminary hearing. (Id.)

2.  Procedural Background

In denying Petitioner's last in the last reasoned state court opinion, the Court of Appeal held, in pertinent part, as follows:

> Here, the historical facts, which are not in dispute, arise from the testimony of the gang officer and the prosecutor's investigator at the hearing on the prosecutor's motion to admit the preliminary hearing transcript. The gang officer arrested Kinsino before the preliminary hearing after a half-mile foot pursuit. In custody at the preliminary hearing, he testified about why he did not want to be a witness. About two-and-one-half weeks before trial, the investigator began trying to find Kinsino. He went to the jail to see if he was still in custody, to look at his booking photograph, and to find out who had visited him there. He did not find Kinsino at either Antonia's house or Rosie's house. Four times he went to Kinsino's girlfriend's house, where she told him Kinsino had said he would be in court on the morning of the first day of trial. Seven, eight or nine times at each place, he looked for Kinsino at the house of a friend whose name the girlfriend had given him and at a park where the friend had told him Kinsino hung out. He did not, however, ask jailers for an address, try to find out if he was on probation, or check with jails or law enforcement agencies in neighboring counties. On those facts, the court found Kinsino unavailable as a witness and granted the prosecutor's motion. (Evid. Code, § 240.[fn])
>
> ................................................................................................................
>
> Even assuming error arguendo, the evidence to which [Petitioner] objects added little to the prosecution's case. After the prosecutor read to the jury Kinsino's preliminary hearing testimony, in which he denied knowing who had fired at Antonia's house, the gang officer testified to Kinsino's prior inconsistent statement that [Petitioner] had shot at the house. Rosie had already so testified at trial, however, so the impeachment was entirely cumulative. Nor was the evidence of Kinsino's fear of gang reprisals and concern about Moises's gang affiliation prejudicial on a record of compelling evidence of [Petitioner's] guilt of all three charges and of the truth of both allegations. Error, if any, in finding due diligence was harmless beyond a reasonable doubt. [Citations].

(Lodged Doc. No. 4, Opinion, at 8-10.)

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. am. VI. In Crawford v. Washington, 541 U.S. 36 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the state from introducing out-of-court statements which are testimonial in nature, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the declarant.

The Court of Appeal's determination that witness Kinsino was unavailable for trial was not objectively unreasonable. Kinsino's testimony was secured at the preliminary hearing only because authorities were able to arrest and detain him, in essence, forcing him to testify at the

preliminary hearing. Kinsino made it very clear that he did not wish to testify as he believed that his and his family's safety was in jeopardy by doing so. As explained by the Court of Appeal, after Kinsino was released from custody, the prosecution made reasonable and diligent efforts to locate him to testify at trial to no avail. Contrary to Petitioner's contention, the admission of Kinsino's testimony at the preliminary hearing did not violate the Confrontation Clause as he had an opportunity to cross-examine such testimony. **(**CT 17-26.**)** Petitioner's claim must be denied.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is directed to enter judgment in favor of Respondent; and,

3. The Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," i.e., when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong"; Hoffman v. Arave, 455 F.3d 926, 943 (9th Cir. 2006) (same). In the present case, the Court finds that reasonable jurists would not find it debatable that the state courts' decision denying Petitioner's petition for writ of habeas corpus were not "objectively unreasonable."

IT IS SO ORDERED.

**Dated:    May 8, 2008**                    /s/ Sandra M. Snyder
                                              UNITED STATES MAGISTRATE JUDGE